UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TCD ROYALTY SUB LLC,<br><br>                              Plaintiff,<br><br>            -against-<br><br>GALDERMA LABORATORIES L.P. and PRASCO, LLC,<br><br>                              Defendants. | 16 Civ.  16-cv-9777<br><br>**NOTICE OF REMOVAL** |

TO THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK:

Defendants Galderma Laboratories, L.P. ("Galderma") and Prasco, LLC ("Prasco," and together with Galderma, "Defendants") are defendants in a civil action filed on November 29, 2016 in the Supreme Court for the State of New York, County of New York (the "State Court Action"). Pursuant to 28 U.S.C. §§ 1441 and 1446, Defendants hereby remove the State Court Action to the United States District Court for the Southern District of New York, which is the judicial district in which such action was filed.

Removal is proper under 28 U.S.C. § 1441(a) because this Court would have had original subject matter jurisdiction under 28 U.S.C. § 1332(a) if this action were originally brought in Federal Court. Defendants respectfully state the following grounds for removing this action:

1.  On or about November 29, 2016, plaintiff TCD Royalty Sub LLC ("TCD") commenced the State Court Action.

2.  There is complete diversity of citizenship between TCD and Defendants in this action because: (a) TCD, a limited liability company, is a non-U.S. citizen for the purposes of the diversity jurisdiction analysis based on the citizenship of its member, which is

organized under the laws of Luxembourg; (b) Galderma, a limited partnership, is a
Delaware citizen for the purposes of the diversity jurisdiction analysis based on the
citizenship of its partners; and (c) Prasco, a limited liability company, is an Ohio citizen
for the purposes of the diversity jurisdiction analysis based on the citizenship of its
members.

3. The amount in controversy in this action, exclusive of interest and costs, exceeds
   $75,000.

On or about December 12, 2016, Defendants obtained a copy of the complaint filed in the
State Court Action.  Copies of all process, pleadings, and orders in the State Court Action are
annexed hereto as Exhibit A.

Written notice of the filing of this notice of removal will promptly be delivered to TCD
through their counsel of record and filed in the Supreme Court for the State of New York,
County of New York.

Dated: December 19, 2016

HAYNES AND BOONE, LLP
*Counsel for Defendants*


By: s/Richard D. Rochford
    Richard D. Rochford
    Joseph Lawlor
    30 Rockefeller Plaza, 26th Floor
    New York, New York 10112
    Telephone: (212) 659-4984
    Facsimile: (212) 884-9572
    richard.rochford@haynesboone.com

# Exhibit A

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

---

TCD ROYALTY SUB LLC,

                              Plaintiff,

        -against-

GALDERMA LABORATORIES L.P. and
PRASCO, LLC,

                              Defendants.

---

Index No. _____

Date Purchased: _____

**SUMMONS WITH NOTICE**

To the above-named Defendant:

        **PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED** to appear in this action by serving a notice of appearance on the Plaintiff(s) at the address set forth below within 20 days after service of this Summons (not counting the day of service itself), or within 30 days after service is complete if the summons is not delivered personally to you within the State of New York.

        **YOU ARE HEREBY NOTIFIED THAT** should you fail to answer or appear, a judgment will be entered against you by default for the relief demanded below.

Dated: November 29, 2016
            New York, New York            By:  /s/ Mitchell Hurley

                                                Mitchell Hurley
                                                Stephanie L. Gal
                                                One Bryant Park
                                                New York, New York 10036
                                                Telephone:   (212) 872-1000
                                                Facsimile:   (212) 872-1002

                                                *Attorneys for Plaintiff TCD Royalty Sub LLC*

**Defendants' Addresses:**

            ATTN: Quintin Cassady
            Galderma Laboratories L.P.
            14501 North Freeway
            Fort Worth, TX 76177

ATTN:  Robert W. Buechner
Prasco, LLC
105 East Fourth Street, Suite 300
Cincinnati, OH 45202

**NOTICE**:

      The nature of this action is breach of contract, breach of the duty of good faith and fair dealing, tortious interference with contract, and unjust enrichment.

      The relief sought is entry of judgment against Defendants in amounts to be determined at trial, and such other and further relief as the Court deems just and proper.

      Should Defendant(s) fail to appear herein, judgment will be entered by default for the relief sought with interest from the date of default and the cause of this action.

**VENUE**:  Plaintiff designates New York County as the place of trial.  The basis of this designation is that Plaintiff resides in New York County.

FILED: NEW YORK COUNTY CLERK 12/07/2016 03:52 PM
NYSCEF DOC. NO. 2   Case 1:16-cv-09777-VSB   Document 1   Filed 12/19/16   Page 7 of 29   RECEIVED NYSCEF: 12/07/2016

INDEX NO. 656225/2016

SUPREME COURT OF THE STATE OF NEW
YORK COUNTY OF NEW YORK

TCD ROYALTY SUB LLC                                                    INDEX NUMBER: 656225/2016

                                                        *Plaintiff*
                          -against-

GALDERMA LABORATORIES L.P., and PRASCO, LLC

                                                        *Defendant*

## AFFIDAVIT OF SERVICE

State of Texas }
County of Dallas }  ss.:

The undersigned, being duly sworn, deposes and says;

Deponent is not a party herein, is over 18 years of age and resides in the state of Texas,

That on **11/30/2016** at **4:00 PM** at **14501 North Freeway, Fort Worth, TX 76177**

deponent served a(n) **Notice of Commencement of Action Subject to Mandatory Electronic Filing, Summons with
Notice and Plaintiff's First Request for Discovery and Inspection of Documents and Things to Galderma Laboratories L.P.**

on **Galderma Laboratories L.P.,** a domestic limited partnership,

by delivering thereat a true copy of each to **Quintin Cassady** personally,

deponent knew said limited partnership so served to be the limited partnership described in said documents as said defendant and knew
said individual to be **Authorized Agent** thereof.

<u>Description of Person Served:</u>
Gender : Male
Skin : White
Hair : Brown
Age : 36 - 50 Yrs.
Height : Over 6'
Weight :161-200 Lbs.
Other :

Sworn to before me this
7+ᴸ day of December, 2016

*Jason M. Cohen*
NOTARY PUBLIC

JASON M. COHEN
MY COMMISSION EXPIRES
April 23, 2018

*Vikki Acord*
Vikki Acord
SHC No. 6812

Serving By Irving, Inc. | 233 Broadway, Suite 2201 | New York, NY 1027
New York City Dept. of Consumer Affairs License No. 0761160

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

TCD ROYALTY SUB LLC

INDEX NUMBER: 656225/2016

                    -against-                    *Plaintiff*

GALDERMA LABORATORIES L.P. and PRASCO, LLC

                                                 *Defendant*

## AFFIDAVIT OF SERVICE

State of Ohio }
County of Hamilton }  ss.:

The undersigned, being duly sworn, deposes and says;

Deponent is not a party herein, is over 18 years of age and resides in the state of Ohio,

That on **11/30/2016** at **4:00 PM** at **105 East Fourth Street, Suite 300, Cincinnati, OH 45202**

deponent served a(n) **Notice of Commencement of Action Subject to Mandatory Electronic Filing, Summons with Notice and Plaintiff's First Request for Discovery and Inspection of Documents and Things to Prasco, LLC**

on **Prasco, LLC**, a domestic limited liability company,

by delivering thereat a true copy of each to **Kathy Currington** personally,

deponent knew said limited liability company so served to be the limited liability company described in said documents as said defendant and knew said individual to be **Authorized Agent** thereof.

Description of Person Served:
Gender : Female
Skin : White
Hair : Blonde
Age : 51 - 65 Yrs.
Height : 5' 0" - 5' 3"
Weight :131-160 Lbs.
Other :

Sworn to before me this
**2nd** day of December, 2016

_____
NOTARY PUBLIC

_____
Brittian Daudelin

Serving By Irving, Inc. | 233 Broadway, Suite 2201 | New York, NY 10279
New York City Dept. of Consumer Affairs License No. 0761160

1 of 1

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

---

TCD ROYALTY SUB LLC,

                Plaintiff,

     -against-

GALDERMA LABORATORIES L.P. and
PRASCO, LLC,

                Defendants.

---

Index No. 656225/2016

**COMPLAINT**

---

      TCD Royalty Sub LLC ("TCD" or "Plaintiff"), by and through its undersigned attorneys, as and for its complaint against defendants Galderma Laboratories L.P. ("Galderma") and Prasco, LLC ("Prasco") hereby alleges the following:

### NATURE OF THE ACTION

      1.     This is an action for breach of, and tortious interference with, a license agreement (the "License Agreement") between Plaintiff TCD, as licensor, and Defendant Galderma, as licensee.

      2.     Pursuant to the License Agreement, Defendant Galderma agreed to pay royalties to TCD for, among other things, Galderma's use of patents and know-how owned by TCD in the development and sale of pharmaceutical products for the treatment of certain skin conditions. TCD has reason to believe that Galderma has underpaid, and continues to underpay, royalties in violation of the License Agreement.

      3.     Galderma also has violated the License Agreement by failing and refusing to provide to TCD information and documents to which TCD is entitled under the License Agreement, and that relate to Galderma's calculation and payment of royalties and other matters.

For example, for more than two years, TCD has attempted to exercise its express right under the License Agreement to audit Galderma's books and records concerning Galderma's royalty payment and other obligations. While Galderma provided some of the information sought, TCD's attempts to obtain the balance of the information has been met by Galderma with refusals, excuses, unfulfilled promises to provide further disclosures, and other unjustified delays.

4.     Based on the limited information available to it from Galderma, TCD estimates that Galderma has miscalculated net revenue, and therefore underpaid royalties owed to TCD, by a substantial amount. While Galderma's refusal to abide by its disclosure obligations under the License Agreement has hobbled TCD's ability to undertake a full analysis of royalties due, TCD suspects that when Galderma finally provides the information to which TCD is entitled, Galderma's royalty payment shortfall will be even larger.

5.     Galderma also breached the License Agreement by entering into a putative sub-license agreement with co-Defendant Prasco (the "Prasco Agreement") without so much as notifying TCD of the arrangement, much less obtaining TCD's prior written consent. In addition, TCD had the express or implied right to receive from Prasco and Galderma certain information concerning the proposed arrangement, and to ensure, among other things, that any sub-license agreement includes "all of the rights and obligations due to [TCD] under" the License Agreement. Galderma has provided none of the required information to TCD concerning Prasco, and has not even provided TCD with an unredacted copy of the Prasco Agreement despite repeated requests over many months by TCD.

6.     For its part, Prasco tortiously interfered with TCD's rights under the License Agreement. Upon information and belief, at all relevant times Prasco was aware of the existence and terms of the License Agreement, including the provisions of the License Agreement

regarding "permitted" sub-licenses, and the provisions expressly and/or impliedly entitling TCD to certain information regarding any putative sub-license, including but not limited to, an unredacted copy of any putative sub-license agreement. By deliberately procuring Galderma's breach of those provisions, Prasco tortiously interfered with the License Agreement. In addition, by using rights and intellectual property owned by TCD without TCD's knowledge (initially) or consent, Prasco was unjustly enriched at TCD's expense.

## THE PARTIES

7.     Plaintiff TCD is a Delaware limited liability company with its principal place of business located at 601 Lexington Avenue, 54th Floor, New York, New York 10022.

8.     Defendant Galderma is a limited partnership organized under the laws of the state of Texas, with its headquarters and principal place of business located at 14501 North Freeway, Fort Worth, Texas 76177. The General Partner of Galderma is Galderma General LLC, a limited liability company under the laws of the state of Delaware, with its principal place of business in Delaware.

9.     Defendant Prasco is an Ohio limited liability company, which, upon information and belief, maintains its principal place of business at 105 East Fourth Street, Suite 300, Cincinnati, Ohio 45202.

## JURISDICTION AND VENUE

10.     This Court has personal jurisdiction over the Defendants pursuant to Civil Practice Law & Rules ("CPLR") § 302(a)(1) because, upon information and belief, Defendants transact business within the state of New York and/or contract to supply goods and/or services within the state of New York and/or committed a tortious act within New York, and/or committed a tortious act outside of New York causing injury to person or property within New

3

York, and/or by their consent.

11.     Venue is proper in this court under CPLR § 503(c) because TCD is a foreign corporation authorized to transact business in New York with a principal office located in New York county.

FACTUAL ALLEGATIONS

**A.  The License Agreement**

12.     TCD and Galderma both hold their rights under the License Agreement as successors.  The original parties to the License Agreement were Shire Laboratories, Inc. ("SLI") as licensor, and Collagenex Pharmaceuticals, Inc. ("CPI") as licensee.

13.     Pursuant to the License Agreement, in 2002 SLI licensed to CPI the right to develop and sell products ("Licensed Products") using SLI's patents and proprietary know-how concerning the use of identified substances in the treatment of certain skin conditions.

14.     Specifically, under Section 2.1, SLI granted CPI "an exclusive worldwide (even as to SLI) license under and using the SLI Technology in the Field (including the rights to sub-license) to develop, to make, to have made, to use, to supply, export, import, to register, and to sell Licensed Product(s) in the Territory."  (License Agreement, § 2.1.)

15.     In consideration for the grant of the license under Section 2.1 of the License Agreement, CPI agreed, among other things, to make royalty payments to SLI in the amount of "5% of Net Sales Value resulting from sales of Licensed Products sold by CPI, its Affiliates or its permitted sub-licensees in the Territory."  (*Id.* § 4.1.)

16.     Pursuant to a December 22, 2005, Asset Purchase Agreement with SLI and Shire PLC (the "Shire APA"), a company called Supernus Pharmaceuticals, Inc. ("Supernus") acquired all of SLI's "right, title and interest in" certain assets, including, but not limited to, the License

4

Agreement and the SLI patents, know-how and other underlying IP (the "Underlying IP").

17.     In or around February 2008, CPI transferred its rights and obligations under the License Agreement to Galderma.  Thus, as of approximately February 2008, the parties to the License Agreement were Supernus as licensor and Galderma as licensee.

18.     Pursuant to a Purchase and Sale Agreement dated April 15, 2008 ("PSA"), Supernus sold certain assets (the "Purchased Assets") to TCD, which was then a subsidiary of Supernus.  The Purchased Assets did not include the Underlying IP, but did include certain rights under the License Agreement, including the right to receive Royalty Payments from Galderma, and related audit rights, among other things.

19.     Pursuant to a Unit Purchase Agreement dated December 14, 2011 ("UPA"), Royalty Opportunities S.àr.l. ("Royalty") purchased TCD from Supernus.  Also pursuant to the UPA, among other things, Supernus agreed to transfer, and ultimately did transfer, the Underlying IP and all of Supernus's remaining "right, title and interest" in and to the License Agreement to TCD.

20.     TCD and Galderma are thus the successor licensor and licensee, respectively, under the License Agreement (in place of the original licensor and licensee, SLI and CPI).

**B. TCD's Rights to Payment of Royalties and Access to Information**

21.     As indicated above, the License Agreement obligates Galderma to, among other things, pay royalties to TCD in the amount of "5% of Net Sales Value resulting from sales of Licensed Products sold by [Galderma], its Affiliates or its permitted sub-licensees in the Territory."  (License Agreement, § 4.1.)

22.     "Net Sales Value" is defined as:

> the amount billed or invoiced by [Galderma] or its permitted sub-
> licensees and Affiliates in connection with sales of Licensed

Product to Customers in the Territory less all reasonable and usual:

(a) Freight charges and insurance;

(b) Import, export, excise and sales taxes and custom duties;

(c) Trade, quantity, or ordinary discounts;

(d) Amounts repaid, allowed or credited because of return of goods;

(e) Reasonable and customary charge back payments and rebates granted to managed health care organizations or to federal, state and local governments not exceeding twelve and a half percent (12.5%) of the invoiced price; and

(f) Amounts given as samples or to conduct various types of studies in accordance with industry standards; if reasonably feasible, to the extent that such items are separately identified and supported by relevant documentation on CPI's invoices.

(*Id.* § 1.14.)

23.     The License Agreement further obligates Galderma to maintain "detailed, accurate and up-to-date records and books of account" regarding the activities of "Galderma [and its]…sub-licensees…sufficient to ascertain the royalties paid."  TCD also has the right to inspect those books and records on 15 days' notice "for the purpose of verifying the accuracy of any statement or report given by [Galderma] and/or the amount of royalties due." (*Id.* §§ 6.1.1, 6.1.2).

### C.  TCD Seeks to Exercise Audit Rights

24.     Although Galderma provided royalty statements to TCD on a quarterly basis, the statements were not consistent in terms of line items, detail, and clarity.  Coupled with lower than expected revenue performance, TCD began to suspect that Galderma was not accurately calculating Net Sales Value, and possibly was underpaying royalties.

25.     On September 3, 2014, TCD notified Galderma that TCD intended to exercise its rights under Section 6.1.2 of the License Agreement to audit Galderma's books and records for

the three-year period from July 1, 2011, to June 30, 2014 (the "Audit Period").  TCD provided

Galderma with the requisite 15-day notice and hired an independent auditor,

PricewaterhouseCoopers LLP ("PwC"), to conduct the audit.  Galderma specifically consented to

TCD's use of PwC to conduct the audit.

26.     On September 29, 2014, PwC provided Galderma with a formal information

request list for business records and accounting documents supporting royalty payments made by

Galderma to TCD during the Audit Period.   Galderma estimated a *one week turnaround* for this

request.  In fact, Galderma took many months to provide even a portion of the information to

which TCD was entitled, and never provided the balance of that required information.

27.     Based on the incomplete information Galderma has provided to date, TCD

estimates that it was underpaid royalties during the period in question by a substantial amount.

However, TCD has been unable to determine the precise amount of the suspected underpayment

because of Galderma's refusal to honor its contractual audit and other disclosure obligations.

TCD also reasonably believes that Galderma has continued to underpay royalties owed to TCD

during periods subsequent to the audit period.

**D.  Galderma's Breaches Relating to Prasco and the Prasco Agreement**

28.     The License Agreement permits only Galderma, its owned affiliates and

"permitted licensees," to develop, market and sell Licensed Products.  Upon information and

belief, Galderma provided a copy of the License Agreement to Prasco and/or otherwise made

Prasco aware of the material terms of the License Agreement before the Prasco Agreement was

executed.

29.     Without seeking or obtaining TCD's consent, Galderma and Prasco executed the

Prasco Agreement, pursuant to which Galderma purported to sublicense to Prasco certain rights

under the License Agreements.  Galderma did not even provide notice to TCD concerning the Prasco Agreement – either before or after it was signed – leaving TCD to learn of the existence of the Prasco Agreement through third parties and media accounts on the internet.

30.     When TCD discovered that Galderma had entered into the Prasco Agreement without asking for (much less obtaining) TCD's permission, TCD promptly objected, and asked for a copy of the Prasco Agreement and related information.  Among other things, TCD sought the Prasco Agreement to evaluate whether Galderma had also breached provisions of the License Agreement requiring it to include in a "permitted" sub-license agreement "all of the rights and obligations due to [TCD] and contained in the [License Agreement]."

31.     Galderma refused.  In the ensuing months, TCD sought repeatedly to convince Galderma to supply a copy of the Prasco Agreement, but without success.  Finally, earlier this year, Galderma provided a heavily redacted copy of the Prasco Agreement to TCD.  However, the version of the Prasco Agreement supplied by Galderma omitted virtually all of its key economic and other terms, including terms relating to:

    (i)       Prasco's obligations to sell Licensed Products,

    (ii)      settlement of ongoing patent litigation,

    (iii)     financial provisions, including terms concerning (a) cost of goods sold, (b) prices of Licensed Products and (c) adjustment of supply prices

    (iv)     calculation of payments due to Galderma from Prasco,

    (v)      Prasco's duties to maintain records and provide information regarding its sales of Licensed Products,

    (vi)     specifications, regulatory filings and communications with regulatory agencies,

    (vii)    Risk Evaluation and Mitigation Strategies requirements for the Licensed Products,

    (viii)   delivery terms and shipping documentation,

    (ix)     initial forecast and post-launch forecast information,

    (x)      product warranty terms,

(xi)     provisions concerning product defects, returns and recalls,

(xii)    packaging and trade communication information,

(xiii)   the parties' representations and warranties,

(xiv)    limitations on liability and indemnification terms, and

(xv)     obligations following suspension or termination of the contract, including return of inventory and repayment of certain costs.

32.     The missing terms, in other words, go to the heart of TCD's consent, royalty payment and other rights under the License Agreement.

33.     The License Agreement also requires Galderma to "submit for [TCD's] consideration a copy of a plan for the marketing and the sale of a Licensed Product" and to "use its reasonable commercial efforts to do so at least six (6) months prior to the first Commercial Delivery" of the Licensed Products. (*Id.* § 7.2.6.) Not only did Galderma and Prasco fail to provide the required marketing plan, in the version of the Prasco Agreement supplied to TCD, as noted above, all provisions concerning Prasco's initial forecasts, post-launch forecasts and purchase orders respecting the Licensed Product were redacted.

34.     Galderma has sought to excuse its breach by claiming that no such plan ever was created. The License Agreement, however, is unambiguous and unqualified: Galderma and/or its sub-licensee (here Prasco) "shall" provide a written plan for marketing and selling the Licensed Product to TCD six months before such sales begin. (*Id.*) If Galderma entered into an agreement with a sub-licensee that did not require the sub-licensee to prepare a marketing plan, that by itself would constitute a material breach of the License Agreement, and Prasco's inducement of such an agreement would constitute an additional interference with TCD's rights under the License Agreement.

35.     Galderma also blames Prasco for Galderma's refusal to honor its obligation to provide an unredacted copy of the Prasco Agreement to TCD. Upon information and belief,

Prasco has been aware of the terms of the License Agreement since before Prasco entered into the Prasco Agreement, including the terms relating to sub-licensees.  According to Galderma, Prasco nevertheless has refused to permit Galderma to supply an unredacted copy of the Prasco Agreement to TCD, unless TCD enters into an onerous "three-way confidentiality" agreement with Prasco and Galderma.

36.     As Prasco is aware, however, TCD is entitled under the License Agreement to receive a copy of the Prasco Agreement without entering into any agreements with Prasco. Moreover, as TCD has repeatedly pointed out, the License Agreement already obligates TCD to maintain the confidentiality of information supplied to it by Galderma, and TCD made clear it would abide by that provision if an unredacted copy of the Prasco Agreement were supplied to TCD by Galderma.  According to Galderma, Prasco nevertheless instructed Galderma not to supply a copy of the Prasco Agreement to TCD, thus procuring a further breach of the License Agreement by Galderma.

37.     TCD has sought, literally for years, to resolve its disputes with Galderma short of litigation, including through multiple face-to-face and telephonic meetings between and among executives and other representatives of the parties with authority to reach a compromise. Unfortunately, through its recalcitrance, gamesmanship and extraordinary and unexcused delays and other misconduct, Galderma has demonstrated conclusively that the parties' disputes cannot be resolved short of litigation, leaving TCD no choice but to commence this action.

### FIRST CLAIM FOR RELIEF
### Breach of Contract (Underpayment of Royalties)

38.     TCD repeats and realleges every allegation asserted above in paragraphs 1 through 38 as if fully set forth herein.

39.     The License Agreement is a valid, enforceable contract between Galderma and

TCD, pursuant to which Galderma is required, among other things, to pay royalties to TCD in the amount of "5% of Net Sales Value resulting from sales of Licensed Products sold by [Galderma], its Affiliates or its permitted sub-licensees in the Territory." (License Agreement, § 4.1.)

40.     TCD performed all of its duties under the License Agreement but, on information and belief, Galderma has failed and refused to pay the full amount of royalties owed to TCD under the License Agreement.

41.     As a result, TCD suffered damages in an amount to be determined at trial.

**SECOND CLAIM FOR RELIEF**
**Breach of Contract (Failure to Comply with Audit Provisions)**

42.     TCD repeats and realleges every allegation asserted above in paragraphs 1 through 41 as if fully set forth herein.

43.     The License Agreement is a valid, enforceable contract between Galderma and TCD, pursuant to which Galderma agreed, among other things, to maintain accurate books and records and make them "available for inspection at all reasonable times" at TCD's request on at least 15 days' notice "for the purpose of verifying the accuracy of any statement or report given by [Galderma] and/or the amount of royalties due." (*Id*. § 6.1.2).

44.     TCD performed all of its duties under the License Agreement.

45.     TCD duly notified Galderma of its intent to conduct an audit as required under the License Agreement. (*Id.*)

46.     Galderma failed to maintain and/or failed to provide all of the information TCD is entitled to under the License Agreement to complete the audit.

47.     As a result, TCD has been damaged in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF
### Breach of Contract (Failure to Maintain Adequate Books and Records)

48.     TCD repeats and realleges every allegation asserted above in paragraphs 1 through 47 as if fully set forth herein.

49.     The License Agreement is a valid, enforceable contract between Galderma and TCD, pursuant to which Galderma is required to maintain "detailed, accurate and up-to-date records and books of account" regarding the activities of "Galderma [and its]…sub-licensees…sufficient to ascertain the royalties paid during the previous three (3) years." (*Id.* § 6.1.1)

50.     TCD performed all of its duties under the License Agreement.

51.     Upon information and belief, Galderma failed to maintain its books and records as required under the License Agreement.

52.     Due to the inadequacy and inaccuracy of Galderma's books and records, TCD suffered damages unknown in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF
### Breach of Contract (Concerning Prasco)

53.     TCD repeats and realleges every allegation asserted above in paragraphs 1 through 52 as if fully set forth herein.

54.     The License Agreement is a valid, enforceable contract between Galderma and TCD, pursuant to which TCD performed all of its duties.

55.     Pursuant to the License Agreement, Galderma only can sub-license rights under the License Agreement with TCD's permission. Galderma nevertheless purported to enter into the Prasco Agreement, which, among other things, expressly designates Prasco as a "manufacturer" within the meaning of the Drug Supply Chain Security Act, without first seeking

or obtaining TCD's consent.

56.     The License Agreement also required Galderma to submit, or cause Prasco to submit, "for [TCD's] consideration a copy of a plan for the marketing and the sale of a Licensed Product" and to "use its reasonable commercial efforts to do so at least six (6) months prior to the first Commercial Delivery" of the Licensed Product.  (*Id.* § 7.2.6.)  Galderma failed to provide the required marketing plan at any time.

57.     The License Agreement entitles TCD to review the Prasco Agreement in its entirety, including in connection with TCD's consent rights, and TCD's rights to evaluate whether the Prasco Agreement is consistent with TCD's rights to royalty payments.  Galderma failed and refused to supply a copy of the Prasco Agreement to TCD for its review.

58.     The License Agreement specifically requires that any sub-license agreement include all of the rights and obligations due to TCD under the License Agreement.  Upon information and belief, the Prasco Agreement, which purportedly is a sub-license agreement, does not include all of the rights and obligations due to TCD under the License Agreement.

59.     As a result of the foregoing breaches of the License Agreement, TCD has been damaged in an amount to be determined at trial.

**FIFTH CLAIM FOR RELIEF**
**Breach of the Duty of Good Faith and Fair Dealing**

60.     TCD repeats and realleges every allegation asserted above in paragraphs 1 through 59 as if fully set forth herein.

61.     The License Agreement is a valid, enforceable contract between Galderma and TCD, pursuant to which TCD performed all of its duties.  As set forth above, Galderma acted in a manner that acted to deprive TCD of the right to receive the benefit of its bargain under the License Agreement.

13

62.     TCD has been harmed by Galderma's breach of the implied covenant of good faith and fair dealing in an amount to be determined at trial.

### SIXTH CLAIM FOR RELIEF
### Tortious Interference with Contract (Against Prasco)

63.     TCD repeats and realleges every allegation asserted above in paragraphs 1 through 62 as if fully set forth herein.

64.     The License Agreement is a valid, enforceable contract between Galderma and TCD, pursuant to which TCD performed all of its duties.  Upon information and belief, Prasco was aware of the License Agreement, and familiar with its terms, at all relevant times.

65.     Prasco intentionally caused Galderma to breach the express and implied terms of the License Agreement by, among other things, (i) procuring Galderma's execution of the Prasco Agreement without Galderma first seeking and obtaining TCD's consent, (ii) failing to prepare or provide a marketing plan for review by TCD, (iii) instructing Galderma not to provide a copy of the Prasco Agreement to TCD, and (iv) entering into a sub-license agreement with Galderma that does not include all of the rights and obligations due to TCD under the License Agreement.

66.     TCD has been damaged by Prasco's tortious interference with the License Agreement in an amount to be determined at trial.

### SEVENTH CLAIM FOR RELIEF
### Unjust Enrichment (Against Prasco)

67.     TCD repeats and realleges every allegation asserted above in paragraphs 1 through 66 as if fully set forth herein.

68.     Prasco obtained and used rights and intellectual property belonging to TCD without TCD's consent, thereby enriching itself unjustly and at the expense of TCD.

69.     Equity and good conscience require restitution to TCD of the amounts by which Prasco was unjustly enriched in an amount to be determined at trial.

## RELIEF REQUESTED

WHEREFORE, TCD respectfully requests entry of judgment against Defendants in amounts to be determined at trial, and such other and further relief as the Court deems just and proper.

Dated: December 9, 2016
       New York, New York

Respectfully submitted,

/s/ Mitchell Hurley
Mitchell Hurley
Stephanie L. Gal
John P. Kane
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1011
Facsimile: (212) 872-1002
Email:    mhurley@akingump.com
*Counsel for Plaintiff TCD Royalty Sub LLC*

15

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

**TCD ROYALTY SUB LLC**

INDEX NUMBER: 656225/2016

-against-                                        *Plaintiff*

**GALDERMA LABORATORIES L.P., and PRASCO, LLC**

*Defendant*

## AFFIDAVIT OF SERVICE

State of Ohio }
County of Hamilton } ss.:

The undersigned, being duly sworn, deposes and says;

Deponent is not a party herein, is over 18 years of age and resides in the State of Ohio

That on **12/12/2016** at **11:48 AM** at **105 East Fourth Street, Suite 300, Cincinnati, OH 45202**

deponent served a(n) **Complaint**

on **Prasco, LLC**, a domestic limited liability company,

by delivering thereat a true copy of each to **Karen Federle** personally,

deponent knew said limited liability company so served to be the limited liability company described in said documents as said defendant and knew said individual to be **Authorized Agent** thereof.

Description of Person Served:
Gender : Female
Skin : White
Hair : Blonde/Gray
Age : 51 - 65 Yrs.
Height : 5' 9"
Weight :131-160 Lbs.
Other :

Sworn to before me this
12th day of December, 2016

NOTARY PUBLIC

Brittian Daudelin

Serving By Irving, Inc. | 233 Broadway, Suite 2201 | New York, NY 10279
New York City Dept. of Consumer Affairs License No. 0761160

1 of 1

FILED: NEW YORK COUNTY CLERK 12/14/2016 03:00 PM
NYSCEF DOC. NO. 6    Case 1:16-cv-09777-VSB   Document 1   Filed 12/19/16   Page 29 of 29

INDEX NO. 656225/2016

RECEIVED NYSCEF: 12/14/2016

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

**TCD ROYALTY SUB LLC**

INDEX NUMBER: 656225/2016

-against-                                        *Plaintiff*

**GALDERMA LABORATORIES L.P., and PRASCO, LLC**

*Defendant*

## AFFIDAVIT OF SERVICE

State of Texas  }
County of Dallas } ss.:

The undersigned, being duly sworn, deposes and says;

Deponent is not a party herein, is over 18 years of age and resides in the state of Texas,

That on **12/12/2016** at **4:30 PM** at **14501 North Freeway, Fort Worth, TX 76177**

deponent served a(n) **Complaint**

on **Galderma Laboratories L.P.**, a domestic limited partnership,

by delivering thereat a true copy of each to **Quintin Cassady** personally,

deponent knew said limited partnership so served to be the limited partnership described in said documents as said defendant and knew said individual to be **Authorized Agent** thereof.

<u>Description of Person Served:</u>
Gender : Male
Skin :  White
Hair : Brown
Age : 36 - 50 Yrs.
Height : Over 6'
Weight :161-200 Lbs.
Other :

Sworn to before me this
1 7 day of December, 2016

_____
NOTARY PUBLIC

JASON M. COHEN
MY COMMISSION EXPIRES
April 23, 2018

_____
Vikki Acord

Serving By Irving, Inc. | 233 Broadway, Suite 2201 | New York, NY 10279
New York City Dept. of Consumer Affairs License No. 0761160